**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**PENNY SUE STOUT,**

**Plaintiff,**

**v.**

**Civil Action 2:18-cv-485**
**Chief Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Penny Sue Stout ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 27), the Commissioner's Memorandum in Opposition (ECF No. 30), Plaintiff's Reply Memorandum (ECF No. 31), and the administrative record (ECF No. 22). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for Title II Social Security Benefits on April 17, 2014, alleging that she had been disabled since February 13, 2014. (R. 157–58.) On May 24, 2016, following administrative denials of Plaintiff's application initially and on reconsideration, a hearing was held before Administrative Law Judge Thuy-Anh Nguyen (the "ALJ"). (*Id.* at 48–67.) Plaintiff, represented by counsel, appeared and testified. Vocational expert Robert E.

Breslin (the "VE") also appeared and testified at the hearing.  On August 3, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 31–42.)  On October 24, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. 11–17.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)[1]

## II. THE ALJ'S DECISION

On August 3, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 31–42.)  At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since February 13, 2014, the alleged onset date of Plaintiff's disability.  (*Id.* at 33.)  The ALJ found that Plaintiff has the severe impairments of history of CSF [cerebrospinal fluid] rhinorrhea, post-meningitis syndrome with headaches, history of inverted papilloma, sinusitis

---

[1] The Commissioner's Motion to Dismiss Plaintiff's Complaint as untimely was denied.  (ECF No. 19–20.)

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

with history of surgery, hypertension, adjustment disorder, depressive disorder, and anxiety disorder. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 34.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: She can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme cold, extreme heat, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Mentally, she is able to understand, remember, and carry out simple, routine tasks and instructions. She would be off task five percent of the workday.

(*Id.* at 35.)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff is capable of performing past relevant work as a cleaner/housekeeper. (*Id.* at 40.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 41.)

In her Statement of Errors (ECF No. 27), Plaintiff raises a single contention of error: that the ALJ failed to properly evaluate the opinion evidence of her treating physician, Subinoy Das, M.D.

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

Plaintiff raises a single issue in her Statement of Errors (ECF No. 27): that the ALJ failed to properly evaluate the opinion evidence of her treating physician, Subinoy Das, M.D.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion, like that of Dr. Das, is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

**A. Dr. Das's Opinions**

Here, Dr. Das issued a "Medical Assessment of Ability to Do Work-Related Activities (Physical)" dated July 10, 2014, in which he opined that Plaintiff required exertional limitations due to fluctuating pressure in her brain due to idiopathic intracranial hypertension ("IIH"). (R. 513–16.) Specifically, Dr. Das stated that Plaintiff's ability to stand, walk, and sit was limited by her IIH, but that the amount of time she could stand, walk, or sit would vary depending on her fluctuating brain pressures: "when pressure rises, maybe incapacitating such that impossible to walk/sit." (*Id.* at 513.) Dr. Das also opined that Plaintiff's ability to climb, balance, stoop, crouch, kneel, and crawl are "variable depending on brain pressure" and that "with high pressure [she] will lose significant coordination" as to her ability to reach, handle, finger, and feel. (*Id.* at

514–15.) Finally, Dr. Das stated that "[h]igh brain pressures will cause severe impairment" of seeing, hearing, and speaking. (*Id.* at 516.)

This July 10, 2014 Assessment is Dr. Das's only opinion as to Plaintiff's vocational limitations identified in the record. However, Dr. Das also wrote a letter outlining his "professional medical opinion" of Plaintiff to the "Medical Director of Disability Company" on March 3, 2015. (R. 499.) In this letter, Dr. Das notes that Plaintiff underwent ICP (intracranial pressure) monitoring at Cleveland Clinic, where her brain pressures were found to be normal over a 24-hour period. (*Id.*) Dr. Das also indicated that he now believed Plaintiff's IIH had been cured by her bariatric surgery which took place in 2010, and that her headaches were currently being caused by post-meningitic syndrome following two bouts of meningitis in 2013 and 2014. (*Id.*; R. 268, 282, 435.) He referred to Plaintiff's headaches as "severe" and "incapacitat[ing]" but did not opine as to any vocational limitations. (R. 499.)

Further, Dr. Das wrote a letter dated April 12, 2015, to Dr. Wayne J. Myles, DO, to provide an update on Plaintiff. (R. 498.) In this letter, Dr. Das stated again that "[a]fter several visits with neurologists and IH experts, we believe that her headaches are currently due to postmeningitic syndrome and not a result of fluctuating pressures." (*Id.*) He further states that "her headaches are being well managed with chronic narcotic use" and assessed Plaintiff as "[s]table with current narcotic therapy for her severe postmeningitic syndrome headaches." (*Id.*)

**B. The ALJ's Evaluation of Dr. Das's Opinions**

The ALJ explained that he gave "little weight" to Dr. Das's opinions because they are vague and unsupported by the record:

> [L]ittle weight has been given to Dr. Das' opinion that the claimant has variable ability to sit, stand, and walk due to fluctuating brain pressures. Dr. Das opined that rising pressures could be incapacitating such that it would be impossible for her to sit or walk. Moreover, he opined that rising pressures would also affect her ability to see, hear, and speak. He further indicated that she would be limited in her

> ability to perform manipulative functioning, as she would lose significant coordination when her brain pressure was high (Exhibit 13F). Not only is this opinion vague, it is also not supported by the medical evidence. For instance, twenty-four hour intracranial pressure monitoring in March 2015 was normal. Additionally, Dr. Das indicated that same month that her elevated intracranial hypertension was cured by bariatric surgery. Moreover, his treatment notes show the claimant was stable and doing well (Exhibits 8F, page 2 and 11F, pages 3, 25, 26, and 29).
>
> Similarly, little weight has been given to Dr. Das' opinion that the claimant has incapacitating headaches and difficulty with cognitive functioning[3] secondary to post-meningitic syndrome (Exhibit 9F, page 7). As discussed above, treating and examining sources have not noted cognitive difficulty. Additionally, the claimant indicated that the severity of her headaches varies daily, ranging from mild to severe, and that rest and medication alleviate her pain. Her neurological evaluations have been unremarkable (Exhibit 9F, pages 3 and 6 and 11F, pages 7, 11, 15, and 24). Moreover, Dr. Nicholas and Dr. Oricoli indicated the claimant could be experiencing rebound headaches secondary to analgesic overuse (Exhibits 12F, page 3 and 19F, page 2).

(R. 39.)

The Undersigned finds no error with the ALJ's consideration and weighing of Dr. Das's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported by objective evidence. The exertional limitations Dr. Das recommended in June 2014 were based on the theory that Plaintiff's headaches were caused by fluctuating intracranial pressure; however, Dr. Das himself appears to have abandoned that theory by March 2015. Further, descriptions of Plaintiff's headaches as "severe" and "incapacitating" are vague and do not permit the ALJ to impose exertional limitations in vocational terms in Plaintiff's RFC. Finally, as of April 2015, Dr. Das indicated that Plaintiff's headaches were "well-controlled."

Plaintiff spends much of her brief extolling Dr. Das's credentials and arguing that the ALJ should have credited his expertise over other consulting sources. But the ALJ did not

[3] Plaintiff is not challenging the ALJ's consideration of Dr. Das's opinion regarding her cognitive functioning.

question Dr. Das's diagnosis or suggest that Plaintiff does not, in fact, suffer from post-meningitic syndrome or frequent and severe headaches.  The problem with Dr. Das's opinion is that he did not opine as to specific exertional limitations that the ALJ could translate into vocational terms.  Nor does Plaintiff identify any limitations that the ALJ should have included, but did not include, in the RFC.  The Undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Das's opinion.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE