# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

PENNY SUE STOUT,

        Plaintiff,     :    Case No. 2:18-cv-485

- vs -                          Judge Sarah D. Morrison
                                    Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

                              :

        Defendant.

## OPINION AND ORDER

Penny Sue Stout ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Disability Insurance Benefits. This matter is before the Court on the Plaintiff's Objection (ECF No. 34) to the Report and Recommendation (R&R) issued by the United States Magistrate Judge on June 19, 2019 (ECF No. 32), recommending that the Court overrule Plaintiff's Statement of Errors and affirm the Commissioner's decision. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Plaintiff protectively filed an application for Title II Social Security Disability Benefits on April 17, 2014. (Admin. Record, 157–58, ECF No. 22). Plaintiff's claims were denied initially on June 25, 2014, and upon reconsideration on August 11, 2014. (*Id.* at 93–96, 98–99).

She filed a Request for Hearing on September 11, 2014. (*Id.* at 105).

Administrative Law Judge Thuy-Anh Nguyen ("ALJ") held an administrative hearing on May 24, 2016. (*Id.* at 48–67). On August 3, 2016, the ALJ issued an unfavorable decision. (*Id.* at 33–42). Plaintiff requested review of the administrative decision to the Appeals Council, which denied her request on October 24, 2017, and adopted the ALJ's decision as the Commissioner's final decision. (*Id.* at 11–17).

Plaintiff filed this case on May 17, 2018 (ECF No. 3),[1] and the Commissioner filed the administrative record on February 1, 2019 (ECF No. 22). Plaintiff filed a Statement of Specific Errors (ECF No. 27), the Commissioner responded (ECF No. 30), and Plaintiff filed a Reply (ECF No. 31). On June 18, 2019, the Magistrate Judge issued her Report and Recommendation. (ECF No. 32). After a thorough analysis, the Magistrate Judge recommended affirming the Commissioner's non-disability finding. On July 2, 2019, Plaintiff timely filed an Objection to the Magistrate's R&R. (ECF No. 34).

### B. Relevant Record Evidence

#### 1. Hearing Testimony

Plaintiff, represented by counsel, appeared and testified at the administrative hearing. She testified that she had not worked since February 13, 2014, and that she was unable to return to work because of unpredictable headaches and fatigue. (*Id.* at 55). Plaintiff stated that she has headaches and fatigue every day that vary in levels of degree and require medicine and immediate rest upon onset. (*Id.*). She also testified that she has tremors and weakness in her hands approximately every other day. (*Id.* at 55–56). The tremors affect Plaintiff's ability to "get

---

[1] The Commissioner's Motion to Dismiss Plaintiff's Complaint as untimely was denied. (ECF No. 19–20).

2

the grasp on things." (*Id.* at 56). Plaintiff informed the ALJ that she also suffers from depression and anxiety but that medicine successfully alleviates symptoms caused by these illnesses. (*Id.* at 60–61).

Plaintiff stated that since her last bout of meningitis in 2014, she "sometimes [] just can't get the memory of things" or she'll "say the wrong words that go with something." (*Id.* at 58). Plaintiff testified that she tries to do chores, like vacuuming, around the house but it often causes pain in her head and she has to lie down. (*Id.* at 58). She also testified that she has trouble lifting or carrying anything over five pounds, laundry often takes her several days to complete, and grocery shopping leaves her exhausted. (*Id.* at 59). Plaintiff recalled that in her previous work at the daycare, she was able to lift up to 75 pounds. (*Id.* at 59).

Vocational Expert Robert Breslin ("VE") also testified. The VE classified Plaintiff's past relevant work experience as a daycare worker as semiskilled, light work, but noted that Plaintiff described it as medium work, lifting occasionally up to 50 pounds. (*Id.* at 62). The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC")[2] to the VE, which limited Plaintiff to light work but she would be off task for five percent of the workday. (*Id.* at 62–63). The VE testified that Plaintiff could return to her most recent position as a daycare worker, although not as she performed, and she would also be capable of her previous cleaner or housekeeper job. (*Id.* at 63). When asked to alter the hypothetical to also limit Plaintiff to understanding, remembering, and carrying out simple routine tasks and instructions, the VE testified that Plaintiff would still be capable of performing a cleaner or housekeeping position. (*Id.* at 63–64). When asked to alter the hypothetical again and limit Plaintiff's off-task time to ten

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

percent of the workday, the VE testified "that would make it difficult to maintain employment, if not impossible." (*Id.* at 64). When asked to alter the hypothetical a fourth time to add that Plaintiff was capable of fingering and handling, the VE testified that the cleaner or housekeeping positions would still be available. (*Id.* at 64–65). However, when the hypothetical was altered a fifth time to limit Plaintiff to only sedentary work, the VE testified that no past work would be available and Plaintiff would have no transferable skills to sedentary work. (*Id.* at 65). The VE also testified that there were a number of light, unskilled positions that Plaintiff could perform, including cashier II, assembler of small products, and unskilled packing. (*Id*. at 63).

### 2. Medical Opinions

After two episodes of bacterial meningitis in February 2013 and February 2014, respectively, Plaintiff was referred to Subinoy Das, M.D., an ENT-otolaryngologist at Ohio ENT. (*Id.* at 268, 282). On March 6, 2014, Dr. Das noted that Plaintiff was found to have an inverting papilloma of her right middle turbinate and sphenoethmoid region. (*Id.* at 265). He noted that although Plaintiff reported a history of active cerebrospinal fluid ("CSF") leaking prior to her first episode of meningitis, she had no obvious CSF leak or skull base defect at the time of the examination. (*Id.*). Dr. Das opined that Plaintiff would likely have to undergo several operations in her lifetime to manage her papilloma. (*Id.*). Overall, he noted that Plaintiff presented "relatively healthy[.]" (*Id.*).

On March 20, 2014, Dr. Das reviewed Plaintiff's MRI and high-resolution sinus CT and noted that the they showed empty sella syndrome and three potential areas of dehiscence or near dehiscence along her skull base. (*Id*. at 264). He opined that Plaintiff had the most predominant form of idiopathic intracranial hypertension ("IIH"), which likely caused her CSF leaks and may have been connected to her prior bariatric surgery. (*Id.*). Shortly thereafter, Dr. Das reported that

the resection of Plaintiff's inverted papilloma was successful. (*Id.* at 262). He also opined that Plaintiff likely had IIH for many years. (*Id.*). Upon examination, Dr. Das noted that Plaintiff appeared to be "healing well" and there was no evidence of CSF rhinorrhea. (*Id.*).

On June 3, 2014, Plaintiff was psychologically evaluated by Gary Sarver, Ph.D., at the request of the Division of Disability Determination. Dr. Sarver concluded that Plaintiff appeared to have no difficulty with cognitive functioning. (*Id.* at 301). Later that month, Dr. Das completed a "Medical Assessment of Ability to Do Work-Related Activities" for Plaintiff. Dr. Das opined that Plaintiff's lifting or carrying abilities were not affected by her impairment but her fluctuating brain pressures made it impossible to walk or sit at times. (*Id.* at 513). He also opined that how often Plaintiff could climb, balance, stoop, crouch, kneel, or crawl depended on her brain pressure. (*Id.* at 514). Dr. Das opined that high brain pressure could cause Plaintiff limited ability to see, hear, and speak, as well as cause her to lose significant coordination. *(Id.* at 515–16). However, he opined that Plaintiff had no environmental limitations. (*Id.* at 514).

On March 3, 2015, Dr. Das issued a professional medical opinion to the "Medical Director of Disability Company." Dr. Das noted that Plaintiff was referred to the Cleveland Clinic where she was found to have normal pressures. (*Id.* at 499). Dr. Das opined that Plaintiff developed meningitis from an episode of elevated intracranial hypertension, which was cured by bariatric surgery, or through direct extension from papilloma. (*Id.*). Dr. Das noted that Plaintiff suffered from severe headaches, which is a known but uncommon complication from repeated episodes of meningitis. (*Id.*). Dr. Das opined that incapacitation from severe headaches and difficulty with cognitive functioning often persist for many decades in patients like Plaintiff and are treated with narcotic pain therapy and physical rehabilitation. (*Id.*). Dr. Das concluded that Plaintiff "is suffering from symptoms consistent with post-meningitic syndrome and therefore

5

should be afforded all decision making into her ability to work that such a diagnosis would entail." (*Id.*).

On April 21, 2015, Dr. Das wrote a letter to Plaintiff's primary care physician in which he stated that he believed Plaintiff's headaches were due to post-meningitic syndrome and not a result of fluctuating pressures. (*Id.* at 498). He indicated that Plaintiff's headaches were being "well managed with chronic narcotic use." (*Id.*). Dr. Das noted that a sinonasal endoscopy revealed no current CSF rhinorrhea and no further surgeries or biopsies were warranted at that time. (*Id.*). Dr. Das described his assessment of Plaintiff as "[s]table with current narcotic therapy for her severe postmeningitic syndrome headaches." (*Id.*).

On October 12, 2015, Brian Oricoli, M.D., Ohio Physical Medicine & Rehabilitation, Inc., examined Plaintiff and noted his surprise that Plaintiff was prescribed oxycodone, since opioids often caused rebound headaches. (*Id.* at 510–11). Ultimately, Dr. Oricoli opined that musculoskeletal pain management was an inappropriate treatment option based on Plaintiff's history of meningitis. (*Id.*). As a result, on March 11, 2016, Plaintiff saw Jacqueline Nicholas, M.D., at Riverside Methodist Hospital for a neurology consultation. (*Id.* at 576). Dr. Nicholas noted that Plaintiff's neurologic exam was "essentially unremarkable except for slow cautious gait." (*Id.*). She also noted that Plaintiff's most recent MRI was unrevealing for contributory causes. (*Id.*). Dr. Nicholas opined that Plaintiff's headaches were caused by central nervous system insult and further exacerbated by analgesic overuse and poor sleep hygiene. (*Id.*).

Two state agency physicians also reviewed Plaintiff's medical records as part of a physical RFC assessment. Gary Hinzman, M.D., opined that Plaintiff could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (*Id.* at 75–76). Dr. Hinzman opined that Plaintiff could stand, walk, and sit with normal breaks for six hours in an eight-hour workday

and had unlimited ability to balance and push or pull with hand or foot controls. (*Id.* at 76). Dr. Hinzman also opined that Plaintiff could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds. (*Id.*). Dr. Hinzman opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (*Id.*). Leslie Green, M.D., adopted many of the same opinions as Dr. Hinzman. (*Id.* at 87–88). However, Dr. Green opined that Plaintiff could never climb ladders, rope, or scaffolds and had several environmental limitations. (*Id.* at 88).

### C. The ALJ's Decision

The Magistrate Judge accurately described the ALJ's decision. (*See* R&R, 2–3, ECF No. 32). At step four of the sequential process,[3] the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: She can frequently stoop, kneel, crouch, or crawl, and climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to extreme cold, extreme heat, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. Mentally, she is able to understand, remember, and carry out simple, routine tasks and instructions. She would be off task five percent of the workday.

(R. at 35).

In arriving at Plaintiff's RFC, the ALJ gave "great weight" to the state agency medical examiners' opinions because they were supported by medical evidence. (*Id.* at 38–39). Conversely, she gave "little weight" to Dr. Das' opinions because they were vague and unsupported by medical evidence. (*Id.* at 39). The ALJ explained her reasoning for that decision as follows:

> Although Dr. Das is a treating physician, his opinion has not been given controlling weight. His opinion that the claimant has no limitation in lifting/carrying or

---
[3] *See* R&R, fn.2, ECF No. 32.

> environmental restrictions is supported by the claimant's stable examination findings and conservative treatment. Therefore, it has been given some weight (Exhibit 13F).
>
> However little weight has been given to Dr. Das' opinion that the claimant has variable ability to sit, stand, and walk due to fluctuating brain pressures. Dr. Das opined that rising pressures could be incapacitating such that it would be impossible for her to sit or walk. Moreover, he opined that rising pressures would also affect her ability to see, hear, and speak. He further indicated that she would be limited in her ability to perform manipulative functioning, as she would lose significant coordination when her brain pressure was high (Exhibit 13F). Not only is this opinion vague, it is also not supported by the medical evidence. For instance, twenty-four hour intracranial pressure monitoring in March 2015 was normal. Additionally, Dr. Das indicated that same month that her elevated intracranial hypertension was cured by bariatric surgery. Moreover, his treatment notes show that the claimant was stable and doing well (Exhibits 8F, page 2 and 11F, pages 3, 25, 26, and 29).
>
> Similarly, little weight has been given to Dr. Das' opinion that the claimant has incapacitating headaches and difficulty with cognitive functioning secondary to post-meningitic syndrome (Exhibit 9F, page 7). As discussed above, treating and examining sources have not noted any cognitive difficulty. Additionally, the claimant indicated that the severity of her headaches varies daily, ranging from mild to severe, and that rest and medication alleviate her pain. Her neurological evaluations have been unremarkable (Exhibit 9F, pages 3 and 6 and 11F, pages 7, 11, 15, and 24). Moreover, Dr. Nicholas and Dr. Oricoli indicated the claimant could be experiencing rebound headaches secondary to analgesic overuse (Exhibits 12F, page 3 and 19F, page 2).

(*Id.*).

Relying on the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a cleaner or housekeeper as "actually and generally performed." (*Id.* at 40). Alternatively, the ALJ determined that Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.* at 41). She therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id*. at 42).

## II. STANDARD OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

## III. ANALYSIS

In her Statement of Specific Errors, Plaintiff asserts one assignment of error, which also forms the basis of her Objection to the Magistrate Judge's R&R. Specifically, Plaintiff contends that the Magistrate Judge erred in finding that the ALJ did not violate the treating physician rule or otherwise err in her evaluation of the medical opinion evidence of Dr. Das.

Plaintiff argues that the ALJ erred in failing to lend controlling weight to Dr. Das' opinion because the ALJ's given explanation for doing so—specifically, that the opinions were vague and unsupported by the medical evidence—was inaccurate and did not include "good reasons" that were "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" (Objection, 2, ECF No. 34, quoting *Brethaur v. Comm'r of Soc. Sec*., No. 2:18-cv-203, 2018 WL 6257433, at *4). In essence, Plaintiff asserts the ALJ, and the Magistrate by extension,

9

improperly failed to apply the treating physician rule. That rule requires an ALJ to "give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 Fed. Appx. 377, 384 (6th Cir. 2013) (alterations in original) (quoting 20 C.F.R. § 404.1527(c)(2)).

Plaintiff's attempt to invoke the rule to require reversal is unsuccessful. In her well-reasoned opinion, the Magistrate Judge properly notes the "good reasons" supporting the ALJ's conclusion that Dr. Das' opinions are inconsistent with the objective evidence of record and therefore should not have been afforded controlling weight. After carefully reviewing the record *de novo*, this Court finds the Magistrate Judge's assessment of the evidence accurate and adopts it here:

> The Undersigned finds no error with the ALJ's consideration and weighing of Dr. Das's opinion. The ALJ articulated the weight he afforded the opinion and properly declined to afford it controlling weight on the grounds it was unsupported by objective evidence. The exertional limitations Dr. Das recommended in June 2014 were based on the theory that Plaintiff's headaches were caused by fluctuating intracranial pressure; however, Dr. Das himself appears to have abandoned that theory by March 2015. Further, descriptions of Plaintiff's headaches as "severe" and "incapacitating" are vague and do not permit the ALJ to impose exertional limitations in vocational terms in Plaintiff's RFC. Finally, as of April 2015, Dr. Das indicated that Plaintiff's headaches were "well-controlled."
>
> Plaintiff spends much of her brief extolling Dr. Das's credentials and arguing that the ALJ should have credited his expertise over other consulting sources. But the ALJ did not question Dr. Das's diagnosis or suggest that Plaintiff does not, in fact, suffer from post-meningitic syndrome or frequent and severe headaches. The problem with Dr. Das's opinion is that he did not opine as to specific exertional limitations that the ALJ could translate into vocational terms. Nor does Plaintiff identify any limitations that the ALJ should have included, but did not include, in the RFC. The Undersigned therefore concludes that the ALJ did not violate the treating physician rule or otherwise err in his consideration and weighing of Dr. Das's opinion.

(R&R, 8–9).

Plaintiff's arguments in her Objection do nothing to cast doubt on the Magistrate Judge's analysis. Unlike cases where the ALJ erroneously declined to give controlling weight to a treating physician's opinion simply because another physician reached a contrary conclusion or the ALJ's decision was merely conclusory, *cf. Brethaur*, 2018 WL 6257433, at *5 (noting that the entirety of the ALJ's analysis regarding the treating physician's opinion was that "[t]he undersigned is aware that there are opinions in the record that the claimant is disabled and unable to work . . . [l]ittle weight is given to these opinions"), the ALJ here "comprehensively set forth the reasons for the weight assigned to [Dr. Das'] opinion[s]." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009). Plaintiff's disagreement with the ALJ's assessment does not translate to the decision being unsupported by substantial evidence.

Accordingly, the Court finds, as did the Magistrate Judge, that the ALJ properly held Dr. Das' opinions to be inconsistent with the other substantial evidence in the case record and therefore deserving of the "little weight" designation. The Court concludes that substantial evidence supports the ALJ's decision denying benefits, and the Court **OVERRULES** Plaintiff's Objection.

## IV. CONCLUSION

Based upon the foregoing, and pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, after a *de novo* determination of the record, this Court concludes that Plaintiff's objection to the Report and Recommendation of the Magistrate Judge is without merit. The Court, therefore, **OVERRULES** Plaintiff's Objection (ECF No. 34), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 32), and **AFFIRMS** the Commissioner's

decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE